In the Matter of Disciplinary Proceedings Against
William A. Pangman, Attorney at Law.

Supreme Court

*No. 96–0039–D. Oral argument January 7, 1998.—Decided
March 5, 1998.*

(Also reported in 574 N.W.2d 232.)

For William A. Pangman there were briefs and oral argument by *William A. Pangman,* Waukesha.

For the Board of Attorneys Professional Responsibility there were briefs and oral argument by *Richard P. Mozinski*, Manitowoc.

¶ 1.   PER CURIAM.   This is an appeal and cross-appeal from the findings of fact and conclusions of law of the referee concerning the conduct of Attorney William Pangman in the course of post-divorce proceedings in which he was a party and from the referee's recommendation that the license of Attorney Pangman to practice law in Wisconsin be suspended for a minimum of six months as discipline for some of that conduct. Attorney Pangman appealed from the findings and conclusions that he engaged in professional misconduct by accusing a trial judge of having tampered with a court record by directing a court reporter to remove portions of the official transcript of a hearing and of otherwise intentionally interfering with his access to a complete hearing transcript for purposes of appeal and by making comments demeaning to the judicial system and engaging in disruptive conduct in a court proceeding. The Board of Attorneys Professional Responsibility (Board) cross-appealed from the referee's conclusion that Attorney Pangman did not violate the attorney conduct rules by refusing to comply with several circuit court orders regarding the custody, placement and support of his children. By the remaining findings and conclusion, the referee determined that Attorney Pangman did not engage in professional misconduct by failing to make reasonable efforts to

expedite the protracted litigation of the post-divorce matters.

¶ 2.    On the basis of the facts properly found by the referee and the conclusions based on those facts, we determine that Attorney Pangman made statements concerning the integrity of a trial judge that were found to be false with reckless disregard as to their truth or falsity, in violation of SCR 20:8.2(a),[1] when he accused the judge of having directed a court reporter to remove portions of an official hearing transcript and of otherwise obstructing the availability of a complete transcript, with the intention of "sanitizing" the record and interfering with Attorney Pangman's announced intention to seek appellate relief. Attorney Pangman also engaged in conduct with the intention of disrupting the court, in violation of SCR 20:3.5(c),[2] and by that conduct and his statements in connection with it he failed to maintain the respect due to courts of justice and judicial officers, as required by the Attorney's Oath, SCR 40.15. As set forth in SCR 20:8.4(g),[3] an

---

[1] SCR 20:8.2 provides, in pertinent part:

**Judicial and legal officials**
(a)   A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

[2] SCR 20:3.5 provides, in pertinent part:

**Impartiality and decorum of the tribunal**
A lawyer shall not:
. . .
(c)   engage in conduct intended to disrupt a tribunal.

[3] The referee's conclusion in this respect was that Attorney Pangman's violation of the Attorney's Oath constituted a violation of SCR 20:8.4(f), which establishes as professional misconduct a lawyer's violation of a supreme court rule. As the

attorney's violation of the Attorney's Oath constitutes professional misconduct.

¶ 3.   As discipline for that professional misconduct, we suspend Attorney Pangman's license to practice law for a period of 90 days, not the minimum six-month period recommended by the referee. In doing so, we recognize the aggravating factors identified by the referee that were the basis for his recommendation of discipline more severe than the 90-day license suspension the Board had suggested was appropriate, but, as explained below, we consider mitigating factors that have not been addressed previously. Those aggravating factors concerned Attorney Pangman's demonstrated lack of respect for the judicial system and his outspoken contempt for it, as well as his deliberate refusal to abide by the obligations imposed upon him as a licensed member of the legal profession.

¶ 4.   Attorney Pangman was admitted to practice law in Wisconsin in 1983 and practices in Waukesha. He has not been the subject of a prior disciplinary proceeding. The referee in this proceeding, Timothy Vocke, reserve judge, made findings of fact and conclusions of law following an evidentiary hearing.

¶ 5.   Over a period of several years, Attorney Pangman has been a party in what the referee described as "highly contentious and lengthy" post-divorce proceedings on the issues of custody, visitation, maintenance and child support. One of those proceedings was before Milwaukee County Circuit Judge Gary Gerlach from the fall of 1992 through the end of August, 1993. At a hearing before Judge Gerlach May 24, 1993, the judge issued an oral decision from the

---

Attorney's Oath is set forth as a supreme court rule, the referee's conclusion is correct, but the court's determination is based on the more specific subsection of SCR 20:8.4.

bench setting child support and asked his court reporter to reduce it to writing and send a copy to each of the parties. During that hearing but prior to announcing the decision, Judge Gerlach had admonished Attorney Pangman for what the judge considered inappropriate behavior in the courtroom. That admonishment did not appear in the written decision prepared by the reporter, as it was not part of the judge's decision.

¶ 6. Three months later, on August 24, 1993, Attorney Pangman filed a motion asking Judge Gerlach to recuse himself. One of the five grounds set forth in that motion was Judge Gerlach's alleged "tampering with the record." In the motion, Attorney Pangman stated:

> Upon information and belief, Judge Gerlach directed the court reporter to remove portions of the official transcript of court proceedings and has otherwise obstructed the timely availability of a verbatim full transcript to purposely sanitize the record and frustrate [my] announced intentions to seek effective appellate relief.

Attorney Pangman reiterated that allegation at the hearing on the recusal motion, and when Judge Gerlach asked him to state the factual basis for it, Attorney Pangman was unable to present any evidence to support his claim.

¶ 7. The referee found that Judge Gerlach had not directed the court reporter to remove portions of the official transcript of the proceeding, intentionally obstruct the timely availability of the verbatim full transcript purposely to sanitize the record, or intentionally frustrate Attorney Pangman's announced intentions to seek appellate relief. What the judge did, the referee found, was direct his reporter to make a

verbatim transcript of his *decision* of May 24, 1993. The referee found further that prior to filing the recusal motion, Attorney Pangman had not accused Judge Gerlach of having tampered with the record, although he had been provided a copy of the decision prepared by the reporter more than two months earlier. The referee found that Attorney Pangman's public and written claims of wrongdoing by Judge Gerlach were false in their entirety and were motivated by his dissatisfaction with the judge's rulings and his desire to have the judge remove himself from the case. Judge Gerlach did recuse himself.

¶ 8.   Based on those facts, the referee concluded that Attorney Pangman violated SCR 20:8.2(a), which prohibits a lawyer from making a statement the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. However, it is unclear from the referee's statement of the legal conclusion whether he concluded that Attorney Pangman violated the rule by knowingly making false statements about the judge's integrity or by making statements with reckless disregard as to their truth or falsity.

¶ 9.   From the referee's factual findings and his discussion of the aggravating factors in his report, we conclude that Attorney Pangman violated SCR 20:8.2(a) by statements he made concerning Judge Gerlach with reckless disregard as to their truth or falsity. The referee made no finding that Attorney Pangman knew those statements were false when he made them, but he did find that when the judge asked him for the factual basis of his allegations of tampering with the record and intentionally interfering with his access to a transcript for purposes of appeal, Attorney Pangman was "unable to present any evidence to back

up his claim." Moreover, in listing the factors considered in aggravation of the severity of discipline to be imposed for Attorney Pangman's misconduct, the referee included Attorney Pangman's "reckless disregard for the truth, as demonstrated by his statements concerning Judge Gerlach."

¶ 10.   Another aspect of Attorney Pangman's conduct during the course of the post-divorce proceedings was his refusal to obey several orders the circuit court had issued concerning child custody, placement and support. In July, 1993, Judge Gerlach found Attorney Pangman in contempt of court for failing to comply with a child support order he had issued the preceding May in respect to arrearages and the current support obligation, and he sentenced Attorney Pangman to six months in the House of Correction, with work release privileges. On December 20, 1994, Judge Robert Landry found Attorney Pangman in contempt for failing to pay child support as ordered, for which he sentenced him to 10 days in the House of Correction, with work release privileges.

¶ 11.   Judge Landry again found Attorney Pangman in contempt January 25, 1995 for failing to comply with a placement order Judge Gerlach had issued giving physical placement of two of the Pangman children to their mother. Judge Landry then suspended placement of Attorney Pangman's children with him until further order and sentenced him to 30 days in the House of Correction. At the end of August, 1995, Attorney Pangman refused to return his daughter to her mother as required by court order, and on September 25, 1995, the court ordered him to return the child immediately. When he did not do so, an order issued on behalf of Judge Landry directing the sheriff to enforce the placement order.

¶ 12. Shortly thereafter, the chief judge of the judicial administrative district issued an order on behalf on Judge Landry suspending placement of the children with Attorney Pangman. Five days later, Judge Landry signed a contempt order resulting from the September 25, 1995 hearing. At the end of October, 1995, Attorney Pangman wrote the sheriff that he was concerned he would be obstructed when attempting to pick up his children on November 1 and asserted that Judge Landry's October 23, 1995 order superseded the chief judge's earlier order suspending placement of his children with him.

¶ 13. After the chief judge subsequently issued an amended order for clarification and directing law enforcement agencies to take necessary steps to enforce the prior court orders, Attorney Pangman's former spouse, with the assistance of the sheriff, attempted unsuccessfully to collect two of the children. Attorney Pangman then sought a writ of habeas corpus in circuit court and, when it was denied, asked the Court of Appeals for the same relief. That court declined to issue the writ, referred the matter to the circuit court, and upheld all of Judge Gerlach's prior placement orders.

¶ 14. The referee found that while Attorney Pangman deliberately disobeyed several placement orders issued by Judge Gerlach and Judge Landry, it was clear that he took every possible action consistent with openly disobeying those orders in the belief that they were not valid. For example, Attorney Pangman made it clear on the record in several circuit court proceedings that he did not agree with the orders, took seven appeals from those orders, brought a petition for a supervisory writ, two petitions for review, and four state and one federal habeas corpus proceedings. In

one of the habeas corpus petitions, he contended that the orders were "invalid" and "illegal" and thus "have no force." In addition to making a record in circuit court that he was not abiding by the orders because he believed they were not valid, Attorney Pangman was found in contempt some six times and spent more than six months in jail rather than obey those orders.

¶ 15.   The referee found that Attorney Pangman's refusal to obey the court orders was open and obvious and that he made it clear that he believed they were illegal and void and that he was not going to obey them. Consequently, the referee concluded that Attorney Pangman did not violate the attorney professional conduct rule that prohibits a lawyer from knowingly disobeying an obligation under the rules of a court, SCR 20:3.4(c),[4] for he came within that rule's specific exception "for an open refusal based on an assertion that no valid obligation exists."

¶ 16.   Addressing a third aspect of his conduct in the post-divorce proceedings, the Board alleged that Attorney Pangman failed to make reasonable efforts to expedite that litigation, as required by SCR 20:3.2.[5] The proceedings generated 1200 pages of transcript, several orders to show cause—three by Attorney

---

[4] SCR 20:3.4 provides, in pertinent part:

**Fairness to opposing party and counsel**
A lawyer shall not:

. . .

(c)   knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

[5] SCR 20:3.2 provides,

**Expediting litigation**
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

Pangman, six by his former spouse—and numerous motions and petitions—27 by Attorney Pangman, 15 by his former spouse. In addition, Attorney Pangman filed seven appeals, one supervisory writ petition, two petitions for review, and five habeas corpus petitions. The referee found that there had been no determination by any judge or judicial officer that anything Attorney Pangman did in the course of representing himself in the proceedings violated the frivolous action or frivolous appeal statutes.

¶ 17. The referee found no clear and convincing evidence that Attorney Pangman's conduct of the litigation violated SCR 20:3.2 for the reason that he was representing himself, not a client, in the proceedings. Accordingly, there was no violation of the rule's requirement to make reasonable efforts to expedite litigation "consistent with the interests of the client." The referee found no violation for the additional reason that Attorney Pangman was entitled to challenge the actions of the court and court officials he felt were erroneous by filing appeals, petitions for review, motions, and habeas corpus petitions. Moreover, the referee found no sufficient credible evidence that Attorney Pangman's intent in making those challenges was merely to delay the outcome of the proceeding or obtain some financial advantage. The Board did not appeal from the referee's findings and conclusion in respect to this claim of professional misconduct it had alleged.

¶ 18. The remaining allegations of professional misconduct concerned Attorney Pangman's conduct in the courtroom during the post-divorce proceedings. In that respect, the referee found that at the May 24, 1993 hearing, Judge Gerlach admonished Attorney Pangman for his gesturing and "emoting," which the judge found distracting to himself and to the court

449

reporter. At the August 30, 1993 hearing, Attorney Pangman deliberately antagonized Judge Gerlach by statements such as asking him, "Are you perturbed now?" In addition, the referee found the assertions Attorney Pangman set forth in his recusal motion before Judge Gerlach and his statement to the judge when arguing that motion clearly to have been intended to antagonize the judge to the point where he would voluntarily remove himself from the case in order not to have to deal with Attorney Pangman.

¶ 19. The referee also found that in his appearance before Judge Landry on January 30, 1995, Attorney Pangman deliberately engaged in conduct intended to disrupt the proceeding. He constantly argued with and interrupted the judge as he was trying to announce his decision on the record. At one point, Judge Landry summoned the bailiff to stand next to Attorney Pangman at counsel's table "and push [him] down into [his] seat, and if necessary, escort [him] out" so that the proceeding could continue and, in the judge's words, "to ensure that proper decorum would be maintained in view of the amazing behavior of Mr. Pangman." The judge stated, "[I]t was impossible to proceed for several minutes while Mr. Pangman was haranguing the court." During the proceeding, Attorney Pangman asserted that the judge was "unable to rule properly as an impartial and detached magistrate in this matter," adding, "I can tell the Court is just itching to pull the trigger on me. . . ." The referee found that Attorney Pangman further attempted to antagonize Judge Landry by filing a motion for recusal in which he charged the judge with, among other things, dishonesty, issuing unlawful decrees in unlawful ways, bias, prejudice, judicial misconduct, antagonism, and gender bias. The referee found that by this conduct,

450

Attorney Pangman showed a definite lack of respect to the court and that when it appeared things were not going well for him, he engaged in "bullying and intimidation tactics."

¶ 20.   On the basis of that conduct in the proceeding before Judge Landry on January 30, 1995, the referee concluded that Attorney Pangman violated SCR 20:3.5(c) and the portion of the Attorney's Oath, SCR 40.15, requiring an attorney to "maintain the respect due to courts of justice and judicial officers." The referee also concluded that Attorney Pangman's statements in his recusal motion before Judge Landry constituted a gross violation of the Attorney's Oath.

¶ 21.   In determining the discipline to recommend for Attorney Pangman's professional misconduct established in this proceeding, the referee took into consideration factors in mitigation and in aggravation of the seriousness of the misconduct and the appropriate disciplinary response to it. In mitigation, the referee noted that Attorney Pangman has not been disciplined previously for misconduct and that he is, in the referee's words, "an extremely competent advocate who is fully capable of conducting himself in a professional manner, if he chooses to do so." As aggravating factors the referee listed the following: Attorney Pangman's total lack of respect for the judicial system, for which he has shown outspoken contempt; his reckless disregard for the truth; his deliberate refusal to abide by any general rules of fair play or specific rules governing the legal system if he determines it to be to his benefit to do so; his repeatedly demonstrated lack of concern for the rights and reputations of others and the obligations imposed upon him as a licensed member of the legal profession; his grandiose vision of himself; his inability

to admit that what he is doing or saying is wrong or inappropriate, regardless of the evidence.

¶ 22.    Assessing Attorney Pangman's misconduct in light of those mitigating and aggravating factors, the referee determined that it would be inappropriate to recommend as discipline for it a license suspension for a period of less than six months, for under the court's rules, Attorney Pangman could have his license reinstated following such a suspension merely by filing with the Board an affidavit showing full compliance with all the terms and conditions of the order of suspension. SCR 22.28(2).[6] Accordingly, the referee rejected the Board's position that a 90-day license suspension would be an appropriate recommendation.

¶ 23.    Instead, the referee recommended that the court suspend Attorney Pangman's license for at least six months, in order that reinstatement require an order of this court and Attorney Pangman's showing that he has complied with a number of conditions, including that he understands the standards imposed upon lawyers and that he will act in conformity with those standards. SCR 22.28(3) to (6).[7] In making that

---

[6] SCR 22.28 provides, in pertinent part:

**Reinstatement.**

. . .

(2)   An attorney's license suspended for misconduct or medical incapacity for less than 6 months is automatically reinstated upon the attorney's filing with the administrator an affidavit showing full compliance with all the terms and conditions of the order of suspension.

[7] SCR 22.28 provides, in pertinent part:

**Reinstatement.**

. . .

(3)   An attorney whose license is revoked or suspended for 6 months or more for misconduct or medical incapacity shall not resume practice until the license is reinstated by order of the

supreme court. A petition for reinstatement may be filed at any time commencing, in the case of a license suspension, 3 months prior to the expiration of the suspension period or, in the case of a license revocation, 5 years after the effective date of revocation. A petition for reinstatement shall be filed with the court and a copy shall be filed with the administrator.

(4) The petition for reinstatement shall show that:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law, including a list of specific activities pursued.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements of SCR 22.26.

(i) The petitioner indicates the proposed use of the license if reinstated.

(j) The petitioner has fully described all business activities during the period of suspension or revocation.

(k) The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the restitution is not complete, petitioner's explanation of the failure or inability to do so.

(5) The administrator shall investigate the eligibility of the petitioner for reinstatement and file a report and recommendation with the board. At least 30 days prior to the hearing on the petition before a professional responsibility committee, the administrator shall publish a notice in a newspaper of general circulation in any

that if the court disciplines him, he is not going to change.

¶ 24.    Before addressing the issues presented in the appeal and cross-appeal, we consider the referee's findings of fact and conclusion of law in respect to Attorney Pangman's conduct of the lengthy post-divorce proceedings. Neither party challenged the referee's findings of fact in that regard, and we adopt those findings. We determine that the referee properly concluded that the actions Attorney Pangman took in the post-divorce litigation did not constitute a failure to make reasonable efforts to expedite the matter, as required by SCR 20:3.2. First, Attorney Pangman was representing himself in those proceedings and, consequently, his obligation under the rule to make reasonable efforts to expedite litigation was in respect to the interests of his client, that is, himself. Second, it was the referee's determination, one which neither party has challenged, that there was insufficient credible evidence that Attorney Pangman's pursuit of legal

county in which the petitioner maintained an office prior to suspension or revocation and in the county of the petitioner's residence during the suspension or revocation and in an official publication of the state bar.

The notice shall contain a brief statement of the nature and date of suspension or revocation, the matters required to be proved for reinstatement and the date on which a hearing on the petition will be held before a professional responsibility committee. In the case of a license suspension, the hearing shall not be held prior to the expiration of the period of suspension.

(6)   The petitioner has the burden of demonstrating by clear and convincing evidence that the petitioner has the moral character to practice law in this state and that the petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive of the public interest. The petitioner shall also demonstrate by clear and convincing evidence full compliance with the terms of the order of suspension or revocation and the requirements of SCR 22.26.

recourse during that litigation was anything more than a series of challenges to actions by the court that he believed were erroneous and should be reviewed.

¶ 25. We turn then to the first issue presented in this appeal, namely, whether the referee properly concluded that Attorney Pangman violated SCR 20:8.2 by making statements he knew to be false or with reckless disregard as to their truth or falsity regarding Judge Gerlach's actions and motivations in respect to the court reporter's transcription of the judge's decision from the bench. As previously stated, we have determined that the relevant portion of the rule as applied here is not the "known to be false" element but the "reckless disregard of truth or falsity." Contrary to Attorney Pangman's assertion in this appeal that he had a reasonable factual basis for accusing Judge Gerlach of having altered the transcript of the hearing, the record contains sufficient evidence to establish that he did not.

¶ 26. It was Attorney Pangman's contention in the course of the disciplinary proceeding and in the instant appeal that the judge had ordered the court reporter to omit from the transcript of the proceeding the judge's admonition to him regarding his gesturing and the judge's harsh criticism of a letter Attorney Pangman had written to his former spouse regarding child support. As the referee found, however, it was not a transcript of the proceeding that the judge had directed the court reporter to prepare but a written transcription of the decision the judge had delivered from the bench. The document Attorney Pangman accused the judge of having tampered with, with the intention of "sanitizing" it, is titled "Memorandum Decision and Order from the Bench." Moreover, the transcript of the entire proceeding demonstrates that

the point at which the judge admonished and criticized Attorney Pangman preceded the judge's statement of his decision, occurring near the end of the parties' presentations prior to that decision.

¶ 27.   Further, Attorney Pangman did nothing to bring the claimed omission to the attention of either the court or the reporter during the two months he had a copy of the memorandum decision prior to filing the recusal motion in which he accused the judge of intentionally having tampered with the record to interfere with his appellate rights. He made no objection to the memorandum decision when he appeared before Judge Gerlach in late July, 1993, almost a month before filing his recusal motion. During that proceeding, the judge brought to the attention of the parties three typographical errors that had appeared in the memorandum decision and stated the corrections he was directing be made. Attorney Pangman made no objection, either to the proposed corrections or to what he later would claim was the judge's intentional tampering with the record. Also, the referee made the undisputed finding that when Judge Gerlach asked Attorney Pangman for the factual basis of his accusations at the hearing on the recusal motion, Attorney Pangman was unable to present any evidence to support them.

¶ 28.   In light of the time Attorney Pangman had the copy of the memorandum decision prior to filing his recusal motion, his contention on appeal that his accusations against the judge occurred in what he termed "the context of a hurriedly prepared pro se Motion for Recusal," and were for that reason somehow excusable, is disingenuous. Similarly meritless is his contention that his accusations were ameliorated by his statement in the recusal motion that they were made "on information and belief."

¶ 29. The referee's other conclusion regarding his professional misconduct from which Attorney Pangman has appealed concerns his conduct before Judge Landry and the statements he made about that judge in his recusal motion. The facts underlying the referee's conclusion that Attorney Pangman violated SCR 20:3.5(c) by conduct intended to disrupt the court and also violated that portion of the Attorney's Oath requiring an attorney licensed by this court to maintain the respect due to courts and judicial officers are a matter of record in the proceeding before Judge Landry and are not disputed. We determine that the conclusion was proper.

¶ 30. We reject Attorney Pangman's attempt to minimize the seriousness of that conduct by asserting that it occurred only after the proceeding before Judge Landry had reached what he termed an "objectionable" stage—after Judge Landry refused to grant his request for an adjournment to obtain counsel to represent him—and by contending that it had been prompted by surrounding circumstances, such as the fact that he was told at the outset of the hearing that he would be jailed for contempt previously committed. We also reject his characterization of his statements to the judge as "merely criticism" or "possibly disrespectful."

¶ 31. Turning to the Board's cross-appeal from the referee's conclusion that Attorney Pangman did not violate SCR 20:3.4(c) by knowingly disobeying several court orders regarding child support and placement, we determine that the referee properly reached that conclusion based on the facts of record. We agree with the referee's determination that Attorney Pangman's disobedience of the orders came within the exception stated in the rule, that is, that it constituted an open

refusal based on an assertion that no valid obligation to obey those orders existed.

¶ 32. The Board contended that there is clear, satisfactory and convincing evidence in the record to establish that the stated exception does not apply to Attorney Pangman's disobedience of the court orders for the reason that he did not contest openly the validity of his obligation to comply with the orders until the time of hearing on orders to show cause for contempt. The Board asserted that during what it considers the relevant period of time, Attorney Pangman did not inform the court, opposing counsel, or the guardian ad litem that he considered the orders invalid or otherwise insufficient to establish a valid obligation on his part to obey them.

¶ 33. The Board also argued that Attorney Pangman's actions in respect to those orders were inconsistent. While he refused to obey them when it suited his purposes, at times he sought to have those same orders enforced when that enforcement would be to his benefit. For example, on one occasion, he brought a motion for remedial contempt against his former spouse in which he asked the court to enforce a placement order that he himself had refused to obey. The Board took the position that Attorney Pangman's contradictory actions in respect to the orders belie his contention that he openly had asserted that they created no valid obligation.

¶ 34. Contrary to the Board's contentions, it was not necessary that Attorney Pangman make "one clearly worded, unequivocal statement" to the court or to the parties in litigation that he was refusing to obey the orders because they did not constitute valid obligations imposed on him. Under the circumstances, including the fact that he was acting in the dual role of

attorney and litigant, the actions Attorney Pangman took to obtain relief from those orders and his repeatedly having been held in contempt and incarcerated for his disobedience of them are sufficient to bring his conduct within the stated exception to the rule prohibiting a lawyer from knowingly disobeying an obligation under the rules of a court.

¶ 35.  On the issue of discipline to be imposed for Attorney Pangman's professional misconduct that has been established in this proceeding, we have noted that the referee's recommendation of a six-month license suspension is based in large part on the referee's consideration of aggravating factors, particularly Attorney Pangman's lack of respect for the court system, his refusal to abide by general rules of fair play or specific rules governing the legal system when it suits him, his lack of concern for the rights and reputations of others, and his disregard of the obligations imposed upon him as a person licensed to practice law. While the record in this proceeding contains ample evidence of Attorney Pangman's attitude that the referee found sufficiently objectionable to warrant a license suspension of a duration that would require a showing of a proper understanding of and commitment to the standards imposed on lawyers, the referee acknowledged that Attorney Pangman demonstrated in the disciplinary proceeding that he has the ability to conform his conduct to the standards expected of attorneys and at the same time be a zealous and effective advocate. The referee reported, "Not once during three days of hearings did [Attorney Pangman] conduct himself in other than an exemplary manner."

¶ 36.  This court had the opportunity to observe Attorney Pangman during his oral argument in this appeal. There, he argued matters of principle without

exceeding the bounds of proper professional demeanor. We are satisfied that Attorney Pangman has the ability to abide by and conform to the rules the court imposes on those it licenses to represent others in our legal system, and we expect that he will do so in the future. In the event he chooses not to, the court's attorney disciplinary process provides a ready remedy. Accordingly, we determine that the appropriate discipline to impose for Attorney Pangman's professional misconduct is a 90-day license suspension.

¶ 37.　The final matter presented in this proceeding is the assessment of costs. The referee recommended that the costs be assessed against Attorney Pangman, and Attorney Pangman objected to the full assessment of costs as set forth in the Board's supplemental statement of costs. That objection was based on the following grounds. First, Attorney Pangman asserted, the Board did not prevail on the majority of the claims of professional misconduct presented in this proceeding, and presumably most of the Board's work for which it incurred costs was directed to those claims. He argued further that the claims on which the Board did prevail concerned his conduct at court proceedings that was documented in large part by transcripts, and thus they did not require the amount of work the Board expended in addressing that matter. Attorney Pangman next contended that the Board brought the proceeding in bad faith and solely for the purpose of harassing or maliciously injuring him. He contended that the misconduct allegations were frivolous and that the Board and its counsel should have known that they had no reasonable basis. Finally, Attorney Pangman argued that the items of costs sought to be assessed against him are not available under the Rules of Civil Procedure and that he is entitled to a meaningful hear-

ing at which the Board would have the burden of proving the applicability, relevance, and reasonableness of the costs it incurred.

¶ 38. None of the objections asserted by Attorney Pangman has merit. Consequently, we require Attorney Pangman to pay the costs incurred by the Board in this proceeding as set forth in its supplemental statement.

¶ 39. IT IS ORDERED that the license of William A. Pangman to practice law in Wisconsin is suspended for a period of 90 days, commencing April 20, 1998.

¶ 40. IT IS FURTHER ORDERED that within 60 days of the date of this order, William A. Pangman pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of William A. Pangman to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 41. IT IS FURTHER ORDERED that William A. Pangman comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 42. JANINE P. GESKE, J., did not participate.