In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Timothy J. RIORDAN, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent,

v.

Timothy J. RIORDAN, Respondent-Appellant.

Supreme Court

*No. 2011AP984–D.—Decided December 27, 2012.*

2012 WI 125

(Also reported in 824 N.W.2d 441.)

For the respondent-appellant, there was a brief filed by *Timothy J. Riordan,* pro se.

For the Office of Lawyer Regulation, there was a brief filed by *Anne MacArthur, Anne MacArthur Law LLC*, Madison.

¶ 1. PER CURIAM. Attorney Timothy J. Riordan appeals Referee Christine Harris Taylor's report recom-

mending the court publicly reprimand Attorney Riordan for professional misconduct and impose the costs of the disciplinary proceeding on Attorney Riordan. Attorney Riordan argues that the matter should be dismissed, contending his conduct was justified as a matter of constitutional right and religious calling.

¶ 2. On review, we adopt the referee's factual findings and conclusions of law with respect to the two counts alleged in the disciplinary complaint. We agree that a public reprimand is appropriate discipline for Attorney Riordan's misconduct and order that Attorney Riordan pay the full costs of this proceeding, which total $10,664.88 as of October 22, 2012.[1]

¶ 3. Attorney Riordan was admitted to the practice of law in Wisconsin in 1978. He practiced in the Milwaukee area. His license has been suspended since October 2012 for nonpayment of dues and non-compliance with trust account certification requirements. He has no previous history of attorney misconduct.

¶ 4. On April 29, 2011, the Office of Lawyer Regulation (OLR) filed a two-count disciplinary complaint against Attorney Riordan alleging Attorney Riordan violated SCR 20:8.2(a)[2] and SCR 40.15[3] (the

---

[1] The OLR does not seek restitution in this matter.

[2] SCR 20:8.2(a) states:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

[3] SCR 40.15 states, in pertinent part: Attorney's oath.

The oath or affirmation to be taken to qualify for admission to the practice of law shall be in substantially the following form: . . .

I will maintain the respect due to courts of justice and judicial officers; . . . . .

44

attorney's oath) which is enforced via SCR 20:8.4(g).[4] The charges stem from multiple statements he made to and about a circuit court judge who denied a guardianship proceeding filed by Attorney Riordan.

¶ 5. The parties entered into a stipulation wherein Attorney Riordan admitted he made the statements that form the basis of the OLR's complaint. The referee conducted an evidentiary hearing on January 13 and 17, 2012. Following the hearing, Attorney Riordan was permitted to submit evidence of good character and filed a post-hearing motion to dismiss. On May 25, 2012, the referee issued a report and recommendation denying the post-hearing motion, concluding Attorney Riordan committed the alleged misconduct, and recommending a public reprimand and the imposition of costs. Attorney Riordan appeals.

¶ 6. Attorney Riordan's undisputed statements to the trial court were made in the context of a guardianship proceeding involving A.C. Attorney Riordan and his wife have been involved with the care of A.C., a disabled war veteran who now suffers from dementia, since the mid-1980s. From the mid-1980s until approximately 2001, A.C. resided in a supervised room and board apartment owned by the Riordans. Beginning in approximately 1985, North Central Trust Company served as guardian of A.C.'s estate, which at one point exceeded $475,000. A.C. did not have a guardian for his person until 2001.

---

I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; . . . .

[4] SCR 20:8.4(g) says it is professional misconduct for a lawyer to "violate the attorney's oath; . . . ."

¶ 7. In 2001 Milwaukee County petitioned for appointment of a guardian for A.C. and, on October 31, 2001, a circuit court judge found A.C. incompetent and appointed Kindcare as guardian of his person. Around this time, A.C. moved from Riordans' supervised apartment into the Riordan family home where he was cared for by the Riordans.

¶ 8. In April 2007 the Riordans petitioned to become guardians of A.C.'s person. At the time the petition was filed, however, there were three pending unsatisfied tax delinquencies against the Riordans totaling $25,000. On May 31, 2007, two days after a judgment of foreclosure was filed against them, the Riordans amended their petition to seek termination of the guardianship over A.C.'s estate on the ground that he was no longer incompetent. The Riordans sought the discharge of Kindcare as guardian of A.C.'s person and the discharge of North Central Trust Company as the guardian of his estate, nominating themselves as guardians of his person and estate instead. The Riordans also requested the court determine that A.C. be entitled to execute a will and powers of attorney, and that he be deemed capable of managing his financial affairs.

¶ 9. In November 2007 the court discharged Kindcare and appointed Supportive Community Services (SCS) as guardian of A.C.'s person. The court conducted a trial on the Riordans' petition on January 23 and 30, 2008, the Honorable Michael J. Dwyer, presiding.

¶ 10. On February 15, 2008, Judge Dwyer entered an order in the matter. The circuit court characterized the care the Riordans provided for A.C. as "top notch," but noted they did not consider that A.C. was incompetent with a compromised capacity to make decisions. The court deemed the Riordans' reliance on A.C.'s

income to be a serious conflict of interest and denied their petition. The court granted the Riordans' request for back pay for services in the amount of $2,000 per month from February 2006 through January 2008 and ordered prospective fees to the Riordans for care giving.

¶ 11. Considering these and other factors, the court continued North Central Trust Company's appointment as guardian of A.C.'s estate and SCS's appointment as guardian of A.C.'s person. The order granted SCS discretion to remove A.C. from the Riordans' home with adequate notice.

¶ 12. The Riordans, who apparently assumed Judge Dwyer would be sympathetic to their efforts to keep A.C. in their home, were unhappy with the court's ruling. Attorney Riordan filed motions seeking substitution of Judge Dwyer, seeking again to substitute the guardian of A.C.'s person and seeking Judge Dwyer's recusal from the case. On March 5, 2008, Judge Dwyer denied several of the Riordans' pending motions. During that hearing Attorney Riordan stated in open court that, "I don't really know whether or not the Court is biased . . . . And I can only respond as a person with, as the famous saying, you have rabbits in your hat, you pull them out in the court."

¶ 13. The escalating rhetoric in subsequent court filings, as well as statements made by Attorney Riordan during the OLR's investigation of this matter, form the basis of the disciplinary complaint against Attorney Riordan. Attorney Riordan was critical of Judge Dwyer, impugning Judge Dwyer's ruling, his impartiality, and his judicial qualifications.

¶ 14. Shortly after the March 5 hearing, SCS notified the Riordans of its intent to remove A.C. from their home on April 24, 2008. On March 11, 2008, Attorney Riordan filed a notice of appeal and unsuc-

47

cessfully moved the court of appeals for a stay of A.C.'s removal from their home. On March 24, 2008, SCS sought to remove A.C. from the Riordans' home. The Riordans refused to comply with SCS's request to turn over A.C. because the notice SCS previously provided indicated a removal date of April 24, 2008.

¶ 15. SCS issued a second notice of intent to remove A.C. on a new date. When SCS arrived to remove A.C. from the Riordans' home on that date, it discovered a note authored by Attorney Riordan stating his wife had taken A.C. to an undisclosed location in an effort to prevent his removal from their home. SCS brought a motion to hold Attorney Riordan's wife in contempt as a result of her actions in concealing A.C.'s whereabouts. A hearing was conducted on SCS's motion on April 7, 2008, and on April 11, 2008, Judge Dwyer found Attorney Riordan's wife in contempt and ordered, among other things, a writ of body attachment and a sanction of $150 per day for each day she remained in contempt of court.

¶ 16. On April 18, 2008, Judge Dwyer held a hearing to further consider SCS's motion to hold Attorney Riordan's wife in contempt and the Riordans' motion to determine the condition of A.C., to take A.C. away on unsupervised visits, and to reconsider the court's prior decisions in the matter.

¶ 17. On April 25, 2008, Attorney Riordan filed a "Motion & Objections for the Record to Consider on the Safety of [A.C.] and [A.C.'s] Relationship to the Riordan's [sic] Related to the Court's Order of April 18, 2008."

¶ 18. On May 7, 2008, Attorney Riordan filed "Motions & Objections for the Record Related to Both the Draft of the Order for April 18th, 2008 & Advocacy Counsel's Report to the Court as Related to [A.C.'s] Wellbeing."

¶ 19. On May 30, 2008, Attorney Riordan filed "Amended Objections and Motions Related to the Decision & Orders from April 18th, 2008 Hearing." Also on that date Attorney Riordan sent a letter to Attorney Pamela Crawford, Advocacy Counsel for A.C., which stated in part that "it has become apparent the rights of those under guardianship are not being fought for or protected due to financial, referral, or political ties to the Court all of which can be manipulated by the Court." In a decision and order issued May 13, 2008, Judge Dwyer rescinded his prior contempt order against Attorney Riordan's wife and denied the pending motions filed by Attorney Riordan.

¶ 20. Attorney Riordan's filings contain increasingly negative rhetoric about Judge Dwyer. For example, in the pleading filed April 25, 2008, Attorney Riordan stated, in part:

- "[T]he Court has made errors of law and uses its hearings to 'stage the appearance of due process' while it violates the Federal constitution, due process, and Chapter 54 rights . . . ."

- "The evidence presented by the Riordans for the record is misused by a Court acting with bias and prejudice. Based on the evidence submitted to this Court and its response to the evidence, the Riordans have concluded that the Court acts on the record to cover-up its own involvement in violating [A.C.'s] and the Riordans' rights. This is necessary because the Court uses people as property for exchange to uphold a system of institutions and agencies that steal people from families to meet their budgets and payrolls."

- "The Court acts for its [own interest), its personal political view, and its own prejudices of what the law should be without regard to the law . . . ."

49

- "[T]hese Court and agency actions are forming an irreversible wound in the minorities in this community that do cause a depression of spirit and could lead to 'violence' as they realize the coercion and wrongfulness in which the Court is involved."

- "[T]his abuse of power by the Court affirms to the minority community that they are still pieces of property for exchange on the auction block of Milwaukee County's injustice."

- "The Court has isolated [A.C.] and the harm that befalls [A.C.] is the Court's doing that cannot be erased by any 'Pontius Pilot' hand washing."

- "The Court treats [A.C.] as property and his rights as something to set aside so the Court can emotionally and personally abuse [A.C.] and Riordans as documented in the medical information and evidence given to the Court."

- "Tragically, the Court 'indulges' itself in the harming of [A.C.] because he is the best example of the wrongfulness of the Court's prejudices and bias in this area of guardianships and mental health. Here the Court is willing to set aside the law that was meant to protect [A.C.] because of the Court's veiled attempt to cover-up all those it has harmed, like [A.C.], in the past with its biases and prejudices."

- "[A.C.] is harmed because there never was due process in this case, only a Court orchestrating a staged performance for the public as it actively is involved in denying the rights of others, affirming its disagreement with Chapter 54, and seeking to secure reelection in the future as it 'stages' a due process hearing and uses the record to make it look as if its injustice is justice."

- "[The Court] uses [A.C.] as piece of property sold on the auction block to an agency's self interests and profit."

50

¶ 21. In a pleading filed May 7, 2008, Attorney Riordan wrote that "[e]very misrepresentation by [SCS] then must be considered as the Court's intended cover up of the wrongful acts the Court knowingly permits and advocates through its political allies . . . ."

¶ 22. In the pleadings and letter written May 30, 2008, Attorney Riordan wrote:

- "[T]he Court is tragically involved in issuing orders which show its intent upon directing the outcome in a case where its bias and prejudices and inability to fairly administer justice have led to Federal and State Constitutional violations, misinterpretations and applications of chapter 54, appointments of a corporate guardian who the court knows violates the rights and well-being and interests of [A.C.]"

- "[T]he Court is executing its own political and personal agenda, not chapter 54."

- "[I]t has become apparent the rights of those under guardianship are not being fought for or protected due to financial, referral, or political ties to the Court all of which can be manipulated by the Court."

¶ 23. In a brief to the Wisconsin Court of Appeals filed July 25, 2008, Attorney Riordan wrote:

- "When the court appointed SCS recommended a CBRF as its initial report as SCS did, this is a choice by a judge who sets out to violate Ch. 54 rights and requirements."

- "Relying on the court to implement Ch. 54, the Riordans instead experienced a civil court's gut wrenching 'kidnapping' of a person . . . ."

- "Judge Dwyer rigged this case and used [A.C.] as property."

51

- "[B]ased upon the Court's decision and actions, the Riordans concluded Judge Michael Dwyer was biased and prejudiced . . . ."

- "The Riordans only recognized the judge's bias in Judge Dwyer's finding ignoring the evidence that supported [A.C.] being with the Riordans and his choice of SCS."

- "[T]he Court has made errors of law and uses its hearing to 'stage the appearance of due process' while it violates the Federal Constitution, due process, and Chapter 54 rights . . . ."

¶ 24. On August 1, 2008, during the OLR's investigation, Attorney Riordan stated:

- "On the personal level, it a known fact husband[s] kill their pregnant spouses too often to want to discuss it, but documentaries examining these murders do study this problem. The fears and problems men have of not being able to have the life they wanted with their wife are real and do exist. In Judge M.J. Dwyer's case there is no explanation given by anyone for how it is that he is able to interfere with and harm the greatest treasure in the lives of those who thrive on caring for those like [A.C.]"

- "The naïve belief that [the Riordans] had about Judge M.J. Dwyer ended with his findings and decision of January 30th 2008."

- "It is in the court orders that the real partiality and biased plan of judge [sic] was exposed."

¶ 25. On August 5, 2008, Attorney Riordan stated to the OLR, "[Judge Dwyer] was directing cases to SCS without regard to other options and with a bias and prejudice that was plainly visible to the Riordans."

¶ 26. The referee concluded that the OLR established by clear and convincing evidence that Attorney Riordan's statements were false when made or were made with reckless disregard for the truth. The referee specifically rejected Attorney Riordan's assertion that his conduct was immunized and his speech protected under the First Amendment.

¶ 27. On appeal, Attorney Riordan does not dispute that he made these statements. He asserts, however, that the case should be dismissed, contending his statements and actions are protected by the First Amendment considerations because they stem from a sincere belief that Attorney Riordan is following the will of God in pursuing A.C.'s guardianship.[5]

■

¶ 28. A referee's findings of fact will be affirmed unless they are clearly erroneous. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. A referee's findings of fact are entwined with credibility determinations. *See, e.g., In re Disciplinary Proceedings Against Charlton,* 174 Wis. 2d 844, 498 N.W.2d 380 (1993). The referee is the ultimate arbiter of witness credibility. *In re Disciplinary Proceedings Against Pump,* 120 Wis. 2d 422, 355 N.W.2d 248 (1984). Conclusions of law are reviewed de novo. *Inglimo,* 305 Wis. 2d 71, ¶ 5.

¶ 29. Attorney Riordan's statements by and about Judge Dwyer violate SCR 20:8.2(a). A lawyer violates the rules of professional conduct if he or she makes a statement concerning the qualifications or integrity of a

---

[5] Attorney Riordan filed a post-trial motion seeking relief based, inter alia, on the claim that the grievant failed to provide the OLR with allegedly exculpatory information. Attorney Riordan does not pursue this argument on appeal.

judge that the lawyer knows to be false, or makes the statement with reckless disregard as to its truth or falsity. SCR 20:8.2(a).

¶ 30. Attorney Riordan's statements are comparable to those of other attorneys deemed to have violated SCR 20:8.2(a). *In re Disciplinary Proceedings Against Conway,* 174 Wis. 2d 832, 498 N.W.2d 393 (1993), we concluded that Attorney Conway violated SCR 20:8.2(a) when he, among other things, wrote a letter to the guardian ad litem in a paternity case, claiming that the guardian ad litem "seem[ed] to have the judge in [his] hip pocket" and that "the guardian and the judge should 'quit [their] vendetta' against his client." Attorney Conway also filed an affidavit alleging that the court was intent to "nail" his client. Further, in various appellate filings, Attorney Conway stated that the trial judge was incompetent, "wasn't the least bit interested in the child," and was out for revenge against the child's mother; he compared the Rock County court system to "Nazi Germany revisited," and stated that the trial judge "reduced [the child's] mother to a prostitute subject to the pimpous [sic] acts of the trial court."

¶ 31. Attorney Sara Lee Johann violated SCR 20:8.2(a) within the context of a paternity action brought against her by the father of the child they had together when she wrote a letter to the family court commissioner, two circuit judges, and the clerk of court asserting that the judges had engaged in "biased, deliberate, illegal, malicious, knowing, and fraudulent interference" with her custody of her child. *In re Disciplinary Proceedings Against Johann,* 216 Wis. 2d 118, 120, 574 N.W.2d 218 (1998). Attorney Johann also asserted that the judges had engaged in illegal malicious destruction of her life and that they had engaged in "hate-based"

decisions against her. *Id. See also* Public Reprimand of Tim Osicka, No. 2002–2 (concluding Attorney Osicka violated SCR 20:8.2(a) when he falsely claimed in an appellate brief that the lower court judge had conducted an ex parte hearing, wrote that he had "little regard" for the presiding judge, and characterized the judge's denial of a continuance as "outrageous" and "made under circumstances where Attila the Hun would have been granted a continuance").

¶ 32. Attorney Riordan's subjective belief that his statements about Judge Dwyer and the guardianship proceeding were appropriate and necessary based upon his religious beliefs and spiritual experiences does not relieve him of the obligation to demonstrate a factual basis for his comments to the court. *See, e.g., In re Disciplinary Proceedings Against Sommers,* 2012 WI 33, 339 Wis. 2d 580, 811 N.W.2d 387 (ruling Attorney Sommers violated SCR 20:8.2(a) with statements impugning the integrity of the court notwithstanding his avowal that he made the statements in "good faith" because the record was devoid of credible evidence to support the challenges to the trial court's credibility); *see also Miss. Bar v. Lumumba,* 912 So. 2d 871, 886 (Miss.). *cert. denied,* 126 S. Ct. 363 (2005) (lawyer had no "objectively reasonable factual basis" for making statements impugning judge's integrity and qualifications); *In re Nathan,* 671 N.W.2d 578, 584 (Minn. 2003) ("Merely cloaking an assertion of fact as an opinion does not give that assertion constitutional protection"); *In re Graham,* 453 N.W.2d 313 (Minn. 1990) (proper standard in lawyer discipline cases is objective inquiry into what a reasonable lawyer, considered in light of all his or her professional functions, would do in the same or similar circumstances); *In re Wilkins,* 777 N.E.2d 714 (Ind. 2002) (purely subjective standard in attorney

speech discipline cases is inappropriate given public interest in protecting administration of justice); *Office of Disciplinary Counsel v. Price,* 732 A.2d 599 (Pa. 1999) (lawyer relied upon rumors, innuendo, and his own perceptions instead of conducting reasonably diligent inquiry).

¶ 33. Here, the referee found, and we agree, that Attorney Riordan failed to articulate any reasonably objective factual basis for the statements he made concerning Judge Dwyer. *See In re Disciplinary Proceedings Against Pangman,* 216 Wis. 2d 440, 574 N.W.2d 232 (1998) (ruling that failure during the disciplinary hearing to provide a factual basis for disparaging claim about a judge was not proof Attorney Pangman knew the claim was false, but supported the claim that it was made in "reckless disregard" of its truth or falsity).

¶ 34. We conclude further that Attorney Riordan's statements concerning Judge Dwyer violated SCR 40.15 (the attorney's oath), enforced via SCR 20:8.4(g). The Rules of Professional Conduct for Attorneys, SCR Chapter 20, contains a preamble of a lawyer's responsibilities which states, in part, as follows: "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." In *State v. Eisenberg,* 48 Wis. 2d 364, 380–81, 180 N.W.2d 529 (1970), we said:

> License to practice law in this state is granted on implied understanding that an attorney shall at all times demean himself in proper manner and refrain from such practices which bring disrepute upon himself, the profession and the courts. This implied understanding is also affirmed by the oath taken by the attorney on admission to practice.

56

¶ 35. Attorney Riordan's statements fall short of his ethical obligation to maintain the respect due to courts and judicial officers. The record evidence supports the referee's conclusion that Attorney Riordan's comments concerning Judge Dwyer violated the Attorney's Oath contrary to SCR 20:8.4(g).

¶ 36. Attorney Riordan asserts that his sincere religious conviction and belief that he is following God's will immunizes his conduct from prosecution for professional misconduct. He believes that he and his wife "are experiencing an ongoing spiritual and religious prophetic experience" and that God "expects him to help those who can fall under guardianship."

¶ 37. The referee recognized, and we will not question, Attorney Riordan's sincere religious faith, but the First Amendment does not protect all statements made by attorneys. Our task is to evaluate whether the statements upon which the charges are based were either false, or made in reckless disregard of the truth.

¶ 38. Here, the referee considered the record evidence and properly determined that Attorney Riordan's statements about Judge Dwyer are not constitutionally protected. False statements made knowingly, or with reckless disregard for the truth, are not constitutionally protected. *See Garrison v. Louisiana,* 379 U.S. 64 (1964) (district attorney's statement that state court judges were lazy and inefficient is protected speech unless made with knowledge of falsity or with reckless disregard of the truth); *In re Green,* 11 P.3d 1078 (Colo. en banc, 2000) (attorney discipline under Rule 8.2(a) for criticism of judge is constitutionally permissible only if disciplinary authority proves statement was false, or involved an opinion that implied an undisclosed statement of fact, that the speaker knew to be false when

made or was made with reckless disregard as to its falsity); *see also,* Restatement (Third) of the Law Governing Lawyers § 114 (2000) (prohibiting false statements made knowingly or recklessly). Attorney Riordan failed to demonstrate that his statements about Judge Dwyer were true or were grounded in an objectively reasonable factual basis.

¶ 39. We turn to the appropriate sanction for Attorney Riordan's misconduct. We agree that a public reprimand is appropriate and supported by prior precedent. Referee Harris Taylor considered the relevant factors and found the most significant aggravating factor to be that Attorney Riordan's comments were at least partly in retaliation for Judge Dwyer's adverse decision in response to efforts by Attorney Riordan and his wife to obtain a significant financial advantage over a vulnerable person's estate. However, in mitigation, the referee noted that Attorney Riordan has no prior discipline, and "there is no doubt that the Riordans loved [A.C.] and considered him a member of their family."

¶ 40. The referee's findings of fact have not been shown to be clearly erroneous, and we adopt them. We agree with the referee's conclusions of law, and we agree with the referee's recommendation that Attorney Riordan receive a public reprimand. Finally, we agree with the referee's recommendation that Attorney Riordan be required to pay the costs of this proceeding.

¶ 41. IT IS ORDERED that Timothy J. Riordan is publicly reprimanded for his professional misconduct.[6]

---

[6] Attorney Riordan is reminded that his license to practice law remains administratively suspended. Before Attorney Riordan may practice law in Wisconsin, he must provide evidence to

¶ 42. IT IS FURTHER ORDERED that within 60 days of the date of this order, Timothy J. Riordan shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶ 43. IT IS FURTHER ORDERED that the director of the Office of Lawyer Regulation shall advise the court if there has not been full compliance with all conditions of this order.

---

this court that he has satisfied his obligations relating to trust account certification and bar dues, assessments and fees, or demonstrated that he has obtained a waiver from the State Bar of Wisconsin. *See* SCR 22.28(1).