IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ralph A. KALAL, Attorney at Law:

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant-Respondent,

v.

Ralph A. KALAL, Respondent-Appellant.

Supreme Court

*No. 00–1070–D. Submitted on briefs November 9, 2001.—
Decided May 2, 2002.*

2002 WI 45

(Also reported in 643 N.W.2d 466.)

For the respondent-appellant there were briefs by *Steven M. Glynn* and *Glynn, Fitzgerald & Albee, S.C.,* Milwaukee, and *Ralph A. Kalal* and *Kalal & Associates,* Madison.

For the complainant-respondent there was a brief by *Robert G. Krohn* and *Roethe, Krohn, Pope, McCarthy & Haas, LLP,* Edgerton.

¶ 1. PER CURIAM. This attorney disciplinary matter involves an attorney's misrepresentation of fact during oral argument to this court, in violation of SCR 20:3.3,[1] which imposes upon attorneys the obligation of candor toward the tribunal. We emphasize at the outset that an attorney's duty of candor toward the tribunal is central to the truth-seeking function of any court, including, obviously, this one. Oral argument is not an opportunity for deception. This court makes its decisions, albeit tentatively, immediately following oral argument, relying in part on information supplied by

---

[1] SCR 20:3.3(a)(1) provides: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal."

counsel in response to the court's questions. This is a critical part of the court's decision-making process. Attorney Ralph Kalal knowingly made false statements to this court during oral argument, in response to questions from members of the court. Under these circumstances, only a strong, unmistakable and public sanction will reinforce the attorney's obligation of truthfulness and candor in court and deter the sort of gamesmanship that Attorney Kalal's conduct represents. We conclude that the gravity of this misconduct requires at least a public reprimand.

¶ 2. Attorney Kalal appealed from the report of the referee, Cheryl Rosen Weston, finding that Attorney Kalal knowingly made a false statement of fact to this court during oral argument and recommending the issuance of a private reprimand. Attorney Kalal argues that the Board of Attorneys Professional Responsibility (Board)[2] has failed to prove by evidence that is clear, satisfactory, and convincing that he knowingly made a false statement of fact to this court. We conclude that the referee's findings in this regard are supported by clear, satisfactory, and convincing evidence, and we adopt them. As noted above, however, we determine

---

[2] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation (OLR) and the supreme court rules applicable to the lawyer regulation system were also revised. Since the conduct giving rise to the complaint occurred prior to October 1, 2000, the investigative body will be referred to as "the Board." Unless otherwise stated, references to supreme court rules will be to those in effect prior to October 1, 2000.

that the seriousness of Attorney Kalal's misconduct warrants the imposition of a public, rather than a private, reprimand.

¶ 3. Attorney Kalal was admitted to practice law in Wisconsin in 1973 and practices in Madison. He has not previously been the subject of a disciplinary proceeding. Between 1996 and 1998 he had between one and three associates working for him, including Attorneys Tracey Wood and Stephen Mays.

¶ 4. Attorney Kalal represented Ralph D. Smythe in Sauk County Circuit Court on a charge of operating a motor vehicle while intoxicated. Smythe's operating privileges were revoked in a refusal proceeding brought under Wisconsin's implied consent law. Attorney Kalal appealed the final order of revocation to District IV of the Court of Appeals. The opening brief in the case was due on December 29, 1997. On that day Attorney Kalal filed a motion requesting an extension of five working days from that date within which to file the brief. The motion stated that the attorney assigned responsibility for preparation of the brief, Michelle Tjader, was on a previously planned vacation and had been able to complete only a draft of the brief prior to the vacation.[3]

¶ 5. By order dated January 2, 1998, the court of appeals denied the motion and dismissed the appeal as a sanction for failure to file the brief. On January 6, 1998, the date requested in Attorney Kalal's motion to extend the time to file the brief, the brief was filed. On the same day Attorney Kalal filed a renewed motion to extend the time to file the brief. By order of January 9,

---

[3] *State v. Smythe,* 225 Wis. 2d 456, 460, 592 N.W.2d 628 (1999).

1998, the court of appeals denied the motion, refused to accept the brief for filing, and confirmed its earlier order of dismissal.

¶ 6. Attorney Kalal appealed the dismissal in *Smythe* to this court. Oral argument was held on November 11, 1998. During oral argument, the following colloquy took place:

> JUSTICE CROOKS: I have a question, however. During the two years preceding the action that was taken in the *Smythe* case, had either you or your firm in any way been sanctioned by the court of appeals, by District IV, for the filing of briefs on a rather regular late basis?
>
> ATTORNEY KALAL: No. There was one case and I believe it is referred to in Judge Dykman's second order in which they declined to allow us to file a reply brief and decided the case without the benefit of that brief.
>
> CHIEF JUSTICE ABRAHAMSON: Is that the 1996 case?
>
> ATTORNEY KALAL: *Mosel.*
>
> CHIEF JUSTICE ABRAHAMSON: Pardon me?
>
> ATTORNEY KALAL: That
>
> CHIEF JUSTICE ABRAHAMSON: It's referenced here, *Mosel.*
>
> ATTORNEY KALAL: Yes.
>
> CHIEF JUSTICE ABRAHAMSON: In an order dated the 18th of September.
>
> ATTORNEY KALAL: Correct.
>
> JUSTICE CROOKS: Was there some warning when that action was taken?

ATTORNEY KALAL: No.

JUSTICE BABLITCH: Just to follow that up, if I may, Justice. On page, appendix 6, in Judge Dykman's first order, he states, "We have advised counsel," which I presume is you, "that extension motions based on counsel's heavy workload fail to make the showing of good cause when they become routine" and then on page 19 of this, which is Judge Dykman's second order, he states: "We have made it clear that we have concluded our normal procedures are inadequate to address appellate counsel's," which I assume is you, "excessive extension motions." I was led to believe by those somehow that they have gotten the word to you or your firm that, "hey, you've pushed the envelope too far."

ATTORNEY KALAL: I think that it would be fair to say that in a couple of their orders they indicated that good cause is shown, but have indicated essentially that they were reluctant because they viewed that there had been more requests than they would like. I will not dispute that. I would not say that they have, with the clarity that is suggested by Judge Dykman's orders said "you do this again, you're going to be wasted."

¶ 7. This court concluded that the court of appeals improperly based its decision to dismiss the *Smythe* appeal, in part, on past, unrelated extension practices by Attorney Kalal in other cases not involving Smythe. It reversed the order of dismissal and remanded the case for reconsideration.

¶ 8. On April 19, 2000, the Board filed a complaint against Attorney Kalal alleging that he knowingly made a false statement of fact to this court during oral argument, thus violating SCR 20:3.3. The complaint also alleged that Attorney Kalal's failure to file the *Smythe* brief when due in the court of appeals, rather

266

than filing a motion for an extension of time on the brief's due date, violated SCR 20:1.3.[4]

¶ 9. The Board notes that during the two years preceding the *Smythe* case, the court of appeals penalized or strongly cautioned Attorney Kalal or his firm for excessive extension motions in orders issued in the following cases:

1. *State v. Lesavage,* No. 95–3364–CR. Counsel of record in the case was Kalal's associate, Tracey Wood. On February 14, 1996, the court of appeals granted Wood's motion for an extension of time to file a brief but said,

 > [t]he motion does not show a workload . . . sufficient to justify an extension. Nor does it show good cause for an extension of the length requested. . . . Counsel should not assume extension motions will be granted, or that short extensions will be granted even when the motion does not show good cause. Failure to file the brief timely may result in a sanction against counsel.

2. *County of Dane v. Chamberlain,* No. 95–2706. The defendant was represented by Kalal. On February 21, 1996, the court of appeals granted Kalal's motion for a one-week extension of time to file a reply brief. The order explained,

 > [a]n extension motion on the ground of counsel's heavy workload makes a less satisfactory showing of good cause when the workload appears so perpetually heavy that extension motions are routine. . . . Counsel should not assume ex-

___

[4] SCR 20:1.3 provides: "Diligence. A lawyer shall act with reasonable diligence and promptness in representing a client."

tensions will be granted or, if granted, that they will be for the length requested. . . . As for the present motion, we reluctantly conclude good cause is shown.

3. *State v. Gaulrapp,* No. 96–1094–CR. Defendant was represented by Kalal. By order dated July 23, 1996, the court of appeals granted a motion for extension of time to file a brief but imposed a $100 monetary penalty on Kalal. The order said,

> [i]t is not clear why counsel waited until the date the brief was due to file the motion for a stay of proceedings. We caution appellant's counsel not to assume that motions filed on the due date will be granted, or that additional time to complete the brief will be provided if the motion is denied. We also caution counsel not to assume that a financial sanction is the only penalty the court is prepared to impose for failure to file a brief timely. Dismissal is also a sanction available under Rule 809.83(2), Stats.

4. *Village of Oregon v. Mark Feiler,* No. 96–1202. Defendant was represented by Kalal's associate, Tracey Wood. By order dated July 23, 1996, the court of appeals granted a repeated motion for an extension of time to file a brief but imposed a $100 monetary penalty on Attorney Wood. The order stated,

> [w]e caution appellant's counsel not to assume that motions filed on the due date will be granted, or that additional time to complete the brief will be provided if the motion is denied. We also caution counsel not to assume that a financial sanction is the only penalty the

court is prepared to impose for failure to file a brief timely. Dismissal is also a sanction available under Rule 809.83(2), Stats.

5. *State v. Timothy Kuklinski,* No. 96–1266. Defendant was represented by Kalal's associate, Tracey Wood. By order dated August 14, 1996, the court of appeals granted a motion for extension of time filed the day a brief was due. The order stated,

> [e]xtension motions on the ground of counsel's heavy workload make a less convincing showing of good cause when the workload at counsel's firm is so perpetually heavy that such motions are routine. We so advised another member of counsel's firm as long ago as February 1996. Since then, we have imposed financial penalties several times against counsel at the firm for failure to file a brief timely. . . . In view of our previously expressed concern, counsel's firm had ample opportunity to arrange for the timely filing of brief. . . .

6. *State v. Mosel,* No. 96–1432–CR. Defendant was represented by Kalal. On September 18, 1996, the court of appeals denied a motion for a one-day extension of time to file a brief. The order stated,

> [i]n February 1996, in an unrelated appeal, we advised Mosel's attorney that an extension motion on the ground of counsel's heavy workload makes a less satisfactory showing of good cause when the workload appears so perpetually heavy that extension motions are routine. We stated that counsel should not assume extensions will be granted. In the months following that order, we im-

posed a monetary penalty against counsel several times for failure to file a brief timely.

In July 1996, in another unrelated appeal, we again advised counsel not to assume that extension motions will be granted, or to assume that additional time to complete the brief will be provided if the motion is denied. We further cautioned counsel not to assume that a financial sanction is the only penalty the court is prepared to impose. We noted that dismissal is also a sanction available under Rule 809.83(2), Stats.

We have reviewed the files of appeals by appellant's counsel. We have received briefs in 26 such appeals in 1996. In 19 of those 26 appeals appellant's counsel sought an extension of the time to file his brief.

Counsel's proclivity for extension motions wastes the resources of this court and causes unnecessary delays. We have advised counsel of our dissatisfaction, and warned him that an appeal may be dismissed. Counsel has had ample time to adjust his practice so that such motions are not routine. We conclude the present motion does not show good cause, and therefore we deny it.

7. *State v. Size*, No. 96–2070–CR. Defendant was represented by Kalal associates Stephen Mays and Tracey Wood. On October 15, 1996, the court of appeals granted a motion to extend the time to file a brief. After citing the occasions in which attorneys in Kalal's firm were advised that they should not assume extension motions would routinely be

granted, the court said, "[u]ntil now, first requests for short extensions have usually been handled by the clerk of this court without review by the court. As a result of counsel's abusive extension motions, all such motions by members of appellant's law firm will now be reviewed by the court."

¶ 10. The referee found that Attorney Kalal's responses at oral argument were false, in violation of SCR: 20:3.3 in three respects.

¶ 11. First, the referee pointed to the following exchange:

JUSTICE CROOKS: During the two years preceding the action that was taken in the *Smythe* case, had either you or your firm in any way been sanctioned by the Court of appeals, by District IV, for the filing of briefs on a rather regular late basis?

ATTORNEY KALAL: No. There was one case.

The "one case" referred to was *Mosel,* in which the court of appeals refused to accept a late-filed brief as a sanction for a late-filed extension motion. The referee concluded that Attorney Kalal's answer was false because it ignored the $100 monetary penalties imposed in *Gaulrapp* and *Feiler.*

¶ 12. The second statement identified by the referee as false arose out of the following exchange:

JUSTICE CROOKS: Was there some warning when that action [the court of appeals' refusal to allow an extension of time to file a reply brief in *Mosel*] was given?

ATTORNEY KALAL: No.

The referee concluded that the answer "no" was clearly false because the *Mosel* order attached the court of

271

appeals' previous orders in *Gaulrapp* and *Chamberlain* which cautioned Attorney Kalal that he should not assume extension motions would be granted, particularly when they were filed on the date the brief was due, nor should he assume additional time to complete the brief would be provided if the motion was denied.

¶ 13. The third statement identified by the referee as false arose out of the following exchange:

> JUSTICE BABLITCH: Just to follow that up if I may, Justice. On page, appendix 6, in Judge Dykman's first order, he states: "We have advised counsel," which I presume is you, "that extension motions based. on counsel's heavy workload fail to make the showing of good cause when they become routine" and then on page 19 of this, which is Judge Dykman's second order, he states: "We have made it clear that we have concluded our normal procedures are inadequate to address appellate counsel's" which I presume is you, "excessive extension motions." I was led to believe by those that somehow they have gotten the word to you or your firm that "hey, you've pushed the envelope too far."
>
> ATTORNEY KALAL: I think it would be fair to say that in a couple of their orders they have indicated that good cause is shown, but have indicated essentially that they were reluctant because they viewed that there had been more requests than they would like. I will not dispute that. I would not say that they have, with the clarity that is suggested by Judge Dykman's orders said "you do this again, you're going to be wasted."

While the referee said Attorney Kalal's remark might be an accurate characterization of the order in *Chamberlain*, where the court of appeals reluctantly concluded good cause for an extension was shown, the remark was inconsistent with the fact that monetary sanctions had been imposed prior to *Smythe*, in *Gaulrapp* and *Feiler*,

and it also ignored the fact that the court of appeals refused to allow the late filing of a brief in *Mosel.*

¶ 14. Attorney Kalal justified the statements he made during the *Smythe* oral argument in two ways.

¶ 15. With respect to orders directed at other members of his firm, he claimed to be unaware of such orders. The referee found this position not to be credible given the small size of Attorney Kalal's law office and the fact that he and Attorney Wood were sanctioned by the same court, in the same way, for the same reason, on the same day.

¶ 16. With respect to cases in which Attorney Kalal admitted personal knowledge, he said that at the time of the *Smythe* oral argument hearing, he forgot what had happened in those other cases. The referee said this assertion was also difficult to believe since Attorney Kalal did remember being sanctioned by the court of appeals in *Mosel,* and the sanction in *Mosel* was based on the court's recitation of previous incidents. Thus, the referee concluded that Attorney Kalal violated SCR 20:3.3.

¶ 17. The referee found that the Board had failed to prove a violation of SCR 20:1.3.

¶ 18. The Board sought a private reprimand based on the absence of any prior discipline and the fact that Attorney Kalal's misleading statements were not central to the facts needed to resolve the *Smythe* case. The referee recommended the imposition of a private reprimand as discipline for Attorney Kalal's misconduct. The referee also recommended that, having prevailed in one of the two counts alleged in the Board's complaint, Attorney Kalal be required to pay one-half the costs of the proceeding.

¶ 19. Attorney Kalal asserts that he gave an accurate and truthful answer to this court's question

whether he or his firm had in any way been sanctioned by the court of appeals for filing briefs on a rather regularly late basis. He contends that the truthful answer to that question was, "no." He says that rather than filing briefs late, he sought extensions precisely for the purpose of assuring that the briefs would not be late. He also says that because the court of appeals granted most of his extension requests, the briefs filed were in fact not late. Attorney Kalal also argues that the $100 penalties imposed in the *Feiler* and *Gaulrapp* cases were not penalties for "rather regularly filing briefs late," and even if they were, the vintage of those penalties (two and one-half years before the *Smythe* oral argument) hardly suggests that those cases should have come instantly to Attorney Kalal's mind when faced with a question from the bench addressing matters outside the record in the *Smythe* case.

¶ 20. Attorney Kalal asserts that the referee's repeated emphasis on the small size of the Kalal law firm betrays the referee's ignorance of practice in a small firm, as well as an ignorance of the norms of oral argument before an appellate court. Attorney Kalal argues that this court took the *Smythe* case to decide the power of the court of appeals to dismiss cases as a sanction for the late filing of briefs. He asserts that given the issue and the record, there is no reason why he should have sought out the record of past orders issued by the court of appeals concerning extension motions filed in other cases.

¶ 21. The Board asserts that a review of the court of appeals' orders discussed above reveals that Attorney Kalal's responses during oral argument were both incomplete and untrue. The Board contends that the referee fairly inferred from the evidence presented that in a small office such as Attorney Kalal's, he must have

been aware of the sanction to his associate issued in the same way, for the same reason, and on the same day Attorney Kalal himself received an identical sanction.

¶ 22. The Board argues that this court was entitled to receive full and fair responses to its inquiries relating to sanctions and warnings issued to Attorney Kalal and his firm by the court of appeals prior to the *Smythe* argument. The Board asserts Attorney Kalal's responses to this court were incomplete and designed to minimize the extent to which measures had been taken to deter Attorney Kalal and his firm from making tardy filings. The Board asserts the regularity with which Attorney Kalal and his firm had been sanctioned and warned by the court of appeals for untimely filings prior to *Smythe* indicates that Attorney Kalal was not merely mistaken in describing his history with the court of appeals; he was in fact intentionally trying to obscure that history both by what he offered to this court at oral argument and by what he did not offer.

¶ 23. A referee's findings of fact on a disciplinary matter will not be set aside unless clearly erroneous. *Disciplinary Proceedings Against Sosnay,* 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). Conclusions of law are reviewed *de novo. Disciplinary Proceedings Against Carroll,* 2000 WI 130, 248 Wis. 2d 662, 675, 636 N.W.2d 718.

¶ 24. The referee's finding that Attorney Kalal's response to Justice Crooks' questions were false is not clearly erroneous. The "one case" referred to by Attorney Kalal in the first exchange with Justice Crooks was *Mosel,* in which the court of appeals denied a motion for a one-day extension of time to file a brief and refused to accept the brief for filing. In addition to *Mosel,* the court of appeals also imposed a $100 monetary penalty on

Attorney Kalal in *Gaulrapp,* and on the same day it imposed a $100 monetary penalty on Attorney Kalal's associate, Tracey Wood, in *Feiler.* Thus, Attorney Kalal's statement during the *Smythe* oral argument that there had only been one occasion in which he or his firm had been sanctioned by the court of appeals was patently false.

¶ 25. Attorney Kalal's response to Justice Crooks' second question regarding whether there was some warning prior to the court of appeals refusing to extend the time to file a reply brief in *Mosel* was also false since the court of appeals did provide warning, in all of the previous cases listed above, that Attorney Kalal should not assume extensions would be granted or that a financial sanction was the only penalty the court was prepared to impose for failure to file a brief in a timely manner.

¶ 26. The referee's finding that Attorney Kalal's false statement of fact in response to Justice Crooks' questions during the *Smythe* oral argument was knowingly made is also not clearly erroneous. The notion that Attorney Kalal would have remembered the court of appeals' refusal to grant him a briefing extension in *Mosel* yet would not have remembered the $100 monetary penalty imposed in *Gaulrapp* is incredible on its face. The referee's finding that under the circumstances presented here in a small law firm consisting of no more than three associates, it is not credible for Attorney Kalal to claim that he was unaware of the $100 monetary penalty imposed on Attorney Tracey Wood in the *Feiler* case the same day the $100 penalty was imposed against Attorney Kalal in *Gaulrapp,* is also not clearly erroneous.

¶ 27. In addition, Attorney Kalal's colloquy with Justice Bablitch during the *Smythe* oral argument was, if not patently false, at least knowingly misleading.

¶ 28. In *Lesavage, Chamberlain, Kuklinski,* and *Size,* the court of appeals cautioned Attorney Kalal and his firm that extension motions would not be routinely granted, that failure to file briefs on time might result in a sanction against counsel, and that all extension motions filed by the Kalal firm would be reviewed by the court. The only reasonable reading of the orders issued in *Lesavage, Chamberlain, Kuklinski,* and *Size* is that the court of appeals was warning Attorney Kalal that he and his law firm had in fact "pushed the envelope too far" with respect to its filing of extension motions, that close scrutiny would be applied to future motions, and that sanctions were possible. Attorney Kalal's response to Justice Bablitch during the *Smythe* oral argument thus appears to be at least deliberately misleading, if not actually false. Even though this statement, standing alone, would perhaps not support a finding that SCR 20:3.3 was violated, it reinforces the conclusion that Attorney Kalal's answers to Justice Crooks' questions were false and knowingly made.

¶ 29. Since the referee's findings that Attorney Kalal knowingly made false statements of fact to this court during the *Smythe* oral argument have not been shown to be clearly erroneous, we adopt them.

¶ 30. The Board sought, and the referee recommended, that a private reprimand be issued as discipline for Attorney Kalal's misconduct. We conclude that the seriousness of Attorney Kalal's misconduct warrants the imposition of a public, rather than a private, reprimand.

277

¶ 31. The referee also recommended that Attorney Kalal be required to pay one-half of the costs and fees associated with this proceeding. Attorney Kalal has filed an objection to the bill of costs filed by the Board and has also filed a motion seeking the imposition of costs and sanctions against the Board and its counsel personally.

¶ 32. Current SCR 21.19 states, in part, that "the director, staff, . . . [and] retained counsel, . . . shall be immune from suit for any conduct in the course of their official duties." In addition, this court has previously declined to award attorneys defense costs in disciplinary proceedings, whether the attorney prevails on some or all counts. *See Disciplinary Proceedings Against Marcus & Tepper,* 107 Wis. 2d 560, 320 N.W.2d 806 (1982). Consequently, we deny Attorney Kalal's motion for costs and sanctions.

¶ 33. Although the referee recommended that Attorney Kalal be required to pay one-half of the costs and fees associated with the proceeding because the referee concluded that the Board had proved only one of the two counts alleged in its complaint, this court has previously rejected objections to full assessments of costs based on an apportionment of the number of misconduct allegations established. *See, e.g., Disciplinary Proceedings Against Pangman,* 216 Wis. 2d 440, 460, 574 N.W.2d 232 (1998); *Disciplinary Proceedings Against Johnson,* 165 Wis. 2d 14, 20, 477 N.W.2d 54 (1991). We follow that past practice here and conclude that Attorney Kalal should be required to pay the full costs and fees associated with this proceeding.

¶ 34. IT IS ORDERED that Ralph Kalal is publicly reprimanded for his professional misconduct.

¶ 35. IT IS FURTHER ORDERED that Ralph Kalal's motion for costs and sanctions against the Board and its counsel is denied.

¶ 36. IT IS FURTHER ORDERED that Ralph Kalal be required to pay the costs and expenses of this disciplinary proceeding. If the costs are not paid within 90 days of the date of this order, and absent a showing to this court of his inability to pay the costs, the license of Ralph Kalal to practice law in Wisconsin shall be suspended until further order of this court.

¶ 37. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). It seems to me that there's more to this case—and less to this case—than meets the eye. As I studied the case, three texts kept coming to mind.

¶ 38. First, I recalled a decision by my wise former law partner, Federal District Court Judge James E. Doyle, sentencing Ben Masel for spitting in the face of U.S. Senator Henry M. Jackson at the Dane County Regional Airport in Madison, Wisconsin, on March 30, 1976. Masel was demonstrating his disapproval of the Senator's alleged relationship with the armament industry.[1] Judge Doyle wrote that he pondered whether to treat the crime as a minor, petty offense or as an important case. Judge Doyle decided to sentence Masel to 15 days in jail, concluding that Masel deserved "a pinch of deserved condemnation for an ignoble, small performance."[2]

---

[1] *United States v. Masel,* 563 F.2d 322 (7th Cir. 1977).

[2] *A Pinch of Deserved Condemnation,* Capital Times, Jan. 5, 1977 (a complete text of Judge Doyle's sentencing statement).

¶ 39. The other two texts were cartoons about lying and honesty. The cartoon about lying is cynical: A father, while driving the family car, says to his young son, "Everyone lies, son, but there are different pay scales."[3]

¶ 40. The cartoon about honesty is more philosophical: A father, sitting in his easy chair in the living room, says to his young son, "Honesty is a fine quality, Max, but it isn't the whole story."[4]

¶ 41. This case, which raises issues addressed in the three texts, bothers me.

\* \* \* \*

¶ 42. Old hands on appellate courts look into each other's eyes, knowingly nod, and wisely say, "garbage in, garbage out." This short-hand phrase means that judges rely on lawyers to keep us informed about a case. Sure, judges (and law clerks) do research and read the record, but the better the briefs and the better the oral argument, then the better the chances are for a good, sound decision. That is why lawyer competence and candor are so important to the proper working of the legal system.

¶ 43. The per curiam opinion in the present case puts it more grandly: "[C]andor toward the tribunal is central to the truth-seeking function of any court. . . . This court makes its decisions, albeit tentatively, immediately following oral argument, relying in part on information supplied by counsel in response to the court's questions."[5]

---

[3] Donald Reilly, *The New Yorker,* Feb. 18 & 25, 2002, at 160.

[4] Robert Weber, *The New Yorker,* March 18, 2002, at 124.

[5] Per curiam op. at ¶ 1.

¶ 44. Whether cast in colloquial or grand terms, this case touches on the importance of providing accurate information to the courts.

¶ 45. Kalal's comments, which are the subject of this disciplinary proceeding, were uttered when he was arguing the *Smythe* case before this court on November 11, 1998.[6] The questions asked at oral argument in *Smythe* were about sanctions and warnings in prior cases. These questions and Kalal's subsequent responses, quoted in the per curiam opinion, were not material to the decision in *Smythe*.

¶ 46. The issue before the supreme court in *Smythe* was whether Judge Dykman could penalize Smythe on the basis of Kalal's conduct in other cases. When Kalal requested a five-day extension from the court of appeals to file his appellate brief in *Smythe* (the first request for an extension in that case), Judge Dykman (sitting as a single judge) dismissed the *Smythe* appeal on the ground that Kalal had repeatedly requested time extensions in other prior cases not involving the *Smythe* case. This court held that Kalal's conduct in other cases was not relevant to whether *Smythe* should be dismissed and that the court of appeals had erred in dismissing *Smythe*.[7]

¶ 47. As Kalal's brief in this disciplinary matter puts it, "This Court took the *Smythe* case to decide that issue [about using Kalal's motions in other cases as grounds to dismiss *Smythe*]. It didn't take the case to

---

[6] *State v. Smythe*, 225 Wis. 2d 456, 592 N.W.2d 628 (1999).

[7] "[A] court of appeals decision to dismiss an appeal may be reversed when there is compelling evidence that that court based its decision, in part, on the past practices of counsel in unrelated matters." *Smythe*, 225 Wis. 2d at 459.

express an opinion about the conduct of either [the] lawyer or appeals court judge."[8]

¶ 48. Supreme Court Rule 20:3.3 appears to allow zero tolerance for false statements of fact or law regardless of their materiality. But shouldn't materiality play a role in determining the discipline to be imposed?

¶ 49. So what is the false statement of fact in the present case? According to the per curiam opinion, Kalal misstated two facts: (1) His statement that his firm had been sanctioned in only one case was false. *See* per curiam op. at ¶ 11. (2) His statement that his firm had not been warned in the *Mosel* case was false. *See* per curiam op. at ¶ 12.

¶ 50. This is the entire case against Kalal.

¶ 51. Kalal claims that he gave an accurate response to Justice Crooks' question, which was about late filings. Justice Crooks' question did not, according to Kalal, relate to motions to extend the time for filing a brief. *See* per curiam op. at ¶ 19. Lame excuse? Or plausible explanation?

¶ 52. The per curiam opinion shies away from the referee's finding that Kalal's response to Justice Bablitch was false, but uses Kalal's response to Justice Bablitch to reinforce the referee's findings regarding the two falsehoods to Justice Crooks. The per curiam opinion declares that while Kalal's response to Justice Bablitch "standing alone, would perhaps not support a finding that former SCR 20:3.3 was violated, it reinforces the conclusion that Attorney Kalal's answers to Justice Crooks' questions were false and knowingly made."[9]

---

[8] Kalal's Brief at 23.

[9] Per curiam op. at ¶ 28. The per curiam opinion further states: "Kalal's colloquy with Justice Bablitch during the

¶ 53. So the disciplinary decision in the present case rests on Kalal's misstating two facts that were not central to the oral argument in *Smythe*. There are fine lines here: Forgetfulness is okay. Spin is okay. False statements of facts, material or not, are not okay.

¶ 54. Another referee might have been persuaded that Justice Crooks' question was not clear enough or could have been interpreted in a different way or that Kalal had forgotten at the *Smythe* oral argument that two and one-half years earlier $100 sanctions were imposed in two cases. However, a different view of the facts is not important because this referee's finding is determinative. Applying a standard of review that gives deference to the referee's findings, I must conclude that the statements were knowingly false. But don't the nature and frequency of the false statements play a role in determining the discipline to be imposed?

¶ 55. Courts also have an obligation to state the facts accurately. In an August 14, 1996, order and in a September 18, 1996, order, the court of appeals concluded that after February 1996, it "imposed a monetary penalty against [Kalal] *several times* for failure to file a brief timely." (Emphasis added.)

¶ 56. However, the record before this court shows that only two—not several—monetary penalties were imposed from February 1996 to September 18, 1996. It is possible that the full record of Kalal's 1996 motions and sanctions was not introduced into evidence and that the court of appeals' assertion of several monetary sanctions may be correct. Trivial observation? Irrel-

*Smythe* oral argument was, if not patently false, at least knowingly misleading." *See* per curiam op. at ¶ 27.

283

evant? Perhaps. But my point is simple: Courts as well as lawyers must use care to state the facts accurately. And we all err.

¶ 57. What is to be done in the future? Apparently the court of appeals concluded that Kalal had asked for too many extensions of time to file appellate briefs. The court of appeals therefore announced that it would examine Kalal's requests differently from the way it examined other attorneys' requests. It will be interesting to see whether the practice of singling out an attorney for special, personal treatment for his or her motions continues. Perhaps *Smythe* puts an end to the court of appeals using special rules to deal with the motions presented by a particular attorney, rather than deciding each motion in each case on its merits.

¶ 58. But let's look at the bigger picture. *Smythe* is but one case and Kalal is but one lawyer in a vast sea of motions seeking an extension of the time allowed for filing briefs. These motions are a growing cottage industry. Approximately 3500 new appeals are filed in the court of appeals each year. In 1996, 1,960 motions for extension of time were filed in the court of appeals, and in 1997, 2,056 such motions were filed.[10] Although these motions were not exclusively motions to extend the time for filing briefs, a random sampling of 11% of the 1996 motions by the office of the clerk of the court of appeals indicates that 95% were requests for extensions of time for filing briefs. A similar sampling of 9% of the 1997 motions indicates that 85% were requests for extensions of time for filing briefs.

¶ 59. A conservative estimate that 80% of the motions for extension filed in the court of appeals are

---

[10] Wis. Stat. § 809.82 (1999–2000). *See also Smythe,* 225 Wis. 2d at 466.

requests to extend the time for filing briefs means that the court of appeals receives approximately 1600 such motions a year, over 130 a month, to extend the time for filing briefs. Only an insignificant number and percentage of these are attributable to Kalal or his firm!

¶ 60. That's a lot of paper in and out of the office of the clerk of the court of appeals. And that's a substantial amount of staff time devoted to motions to extend the time for filing briefs. Does extending the time for filing briefs delay or interfere with decision-making in the court of appeals?

¶ 61. Perhaps the court of appeals should consider a change in its procedures to reduce staff time used for this purpose and to reduce conflicts with attorneys about these motions. The court of appeals might publish its procedures for granting and denying these motions so that its procedures are clear to all attorneys. And this court, with a much smaller motion practice, should consider doing the same.

¶ 62. Back to the present and this case. So what to do about this case? Is it petty or important? Lying at different pay scales? Honesty not the full story? No discipline? Private reprimand? Public reprimand? Suspension?

¶ 63. I am going along with the court's imposition of a public reprimand rather than a private reprimand in this matter, but not without some misgivings. This case makes me very uncomfortable.

¶ 64. WILLIAM A. BABLITCH, J. (*concurring*). In nearly 19 years on this bench, I have been privileged to hear many outstanding attorneys argue forcibly and well for their clients. Perhaps I am naïve, but I have never felt, until this case, that an attorney has deliberately misled or lied to our court.

¶ 65. I would have opted for a harsher penalty, but my colleagues did not agree. I bend to their wisdom.

¶ 66. I am concerned that Mr. Kalal still doesn't get it. At various times throughout his briefs, Kalal repeatedly points accusing fingers at the appeals court judge and at the referee. Mr. Kalal would be well advised to reconsider and take a long look at himself. His defense, technical to the extreme, amounts to no defense at all. He is obviously a bright, intelligent, articulate attorney, capable of representing his clients ably. He does himself, this court, and the bar a disservice by this conduct.

¶ 67. I am authorized to state that Justice N. PATRICK CROOKS joins this opinion.

¶ 68. DAVID T. PROSSER, J. (*concurring*). I join the per curiam opinion without reservation. I write separately to address a gap in this court's analysis that ought to be explained.

¶ 69. On January 2, 1998, the court of appeals denied Attorney Kalal's motion to extend the time for filing a brief and dismissed the appeal of Kalal's client, Ralph Smythe, because his brief was not timely filed. *See State v. Smythe*, 225 Wis. 2d 456, 460, 592 N.W.2d 628 (1999). In a second order dated January 9, 1998, the court of appeals denied a renewed motion to extend time. *Id.* at 461. This court later granted a petition for review, and we heard oral argument in the *Smythe* case on November 11, 1998. *Id.* at 456. Attorney Kalal's representations to the court in that oral argument are the source of this disciplinary proceeding. Per curiam op. at ¶ 6.

¶ 70. The per curiam opinion states that "[D]uring the two years preceding the *Smythe* case, the court of appeals penalized or strongly cautioned Attorney

Kalal or his firm for excessive extension motions in orders issued in the following cases[.]" The opinion then describes seven cases dating from February 14, 1996, to October 15, 1996. *Id.* at ¶ 9. However, the opinion lists no cases between October 15, 1996, and Kalal's December 29, 1997, motion in the *Smythe* case, a gap of 14 months.

¶ 71. The opinion cites no cases from this 14–month period because no case was disclosed in the record presented to this court. However, no inference should be drawn that Attorney Kalal made no extension requests during this period or that he was not admonished by the court of appeals during this period.

¶ 72. In its January 2, 1998, order in the *Smythe* case, the court of appeals said:

> Appellant's counsel's firm has a long history of extension motions in this court, and we have in the past issued stern warnings and taken other actions to attempt to reduce their number. We have noted the toll these motions take on this court's time and resources. We have advised counsel that extension motions based on counsel's heavy workload fail to make the showing of good cause required by Rule 809.82(2), Stats., when they become routine. In the past, such motions were routine. *For much of this past year, counsel's firm has been reasonable in its requests for extensions. However, we have again noted an increase in such motions.* That increase, combined with this motion's complete absence of any showing of why the brief could not be completed during the five weeks before counsel's vacation, leads us to conclude that good cause has not been shown. Therefore, we deny the motion.

*See Smythe*, 225 Wis. 2d at 460 (emphasis added).

¶ 73. In his renewed motion for extension in early 1998, Kalal acknowledged that he had filed 15 motions for extension in 1997. *See id.* at 461.

287

¶ 74. At my request, this court independently examined public records of Kalal's 1997 extension motions to determine the basis for the court of appeals' stated concern. We discovered that Kalal filed an extension motion in December 1997 in *State of Wisconsin ex rel. Ronald E. Patten v. David H. Schwartz,* No. 97–2927. This motion resulted in a December 26, 1997, order allowing an extension but imposing a financial penalty of $100 on Kalal because good cause for delay had not been shown. On or about December 29, 1997, Kalal filed a motion to extend time in *In re Refusal of James P. Sullivan: Dane County v. James P. Sullivan,* No. 97–2143. This motion was denied in an order dated January 2, 1998.

¶ 75. These two cases were fresh in the mind of the court of appeals when it issued its *Smythe* orders in January 1998. The *Patten* case was clearly covered by Justice Crooks's question later in the year.

¶ 76. The two cases found outside the record have had no bearing whatever on the discipline imposed here. They are included in this concurring opinion solely to explain the apparent gap in this court's analysis. It would not be fair for this court to place the court of appeals in a false light by failing to explain what actually transpired during the 14–month period.