In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ralph A. KALAL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Ralph A. KALAL, Respondent.

Supreme Court

*No. 2003AP2131–D. Decided October 14, 2005.*

2005 WI 138

(Also reported in 704 N.W.2d 575.)

11

¶ 1. PER CURIAM. We review, pursuant to SCR 22.17(2), a report and recommendation filed by referee Judith Sperling-Newton in this disciplinary proceeding involving Attorney Ralph A. Kalal ("Kalal"). Kalal entered pleas of "no contest" to the charges against him. The matter was submitted to the referee, who issued a report incorporating the stipulation and adopting the recommended six-month suspension.

¶ 2. The referee's findings of fact are to be affirmed unless they are clearly erroneous. *In re Disciplinary Proceedings Against Sosnay*, 209 Wis. 2d 241, 243, 562 N.W.2d 137 (1997). We review the referee's conclusions of law de novo. *In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. After our review of the record in this matter, we conclude that the referee's findings of fact are not clearly erroneous; accordingly we affirm and adopt them. We also agree with the referee's legal

conclusion that Kalal's conduct violated the rules of professional conduct for lawyers, as set forth herein. Therefore, we adopt the referee's conclusions of law. We agree that a six-month suspension of Kalal's license to practice law is an appropriate sanction for his misconduct, and we further hold that Kalal should be required to pay the costs of these disciplinary proceedings, which totaled $10,884.10 as of April 19, 2005.

¶ 3.  Kalal was admitted to practice law in Wisconsin in 1973. In 2002 he was publicly reprimanded for making a misrepresentation of fact in an oral argument to the supreme court in violation of SCR 20:3.3. *In re Disciplinary Proceedings Against Kalal*, 2002 WI 45, 252 Wis. 2d 261, 643 N.W.2d 466.

¶ 4.  Kalal is the owner of Kalal & Associates, a sole proprietorship engaged in the practice of law. This disciplinary matter derives from a grievance filed by a former associate in Kalal's law firm who charged that Kalal had failed to properly manage contributions to the firm's 401(k) plan.[1] As noted, Kalal eventually executed a stipulation and no-contest plea to the charges and, on March 29, 2005, the referee filed a report and recommendation concluding that Kalal had committed professional misconduct in his handling of the employee 401(k) retirement plan and client trust accounts.

¶ 5.  The complaint filed by the Office of Lawyer Regulation (OLR) alleged, and the referee found, that from approximately October 15, 1997 to August 15, 2001, Michele Tjader was employed as an associate attorney in Kalal's firm. From September 29, 1997 to

---

[1] One of the grievants, Attorney Tjader also independently pursued an action based on these facts in Dane County Circuit Court, *see State v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.

August 15, 2001, Sarah Schmeiser was employed as a receptionist, and subsequently as a paralegal, at the firm. Jackie Bennett, Kalal's wife, worked as the firm's office manager during the time of Tjader's and Schmeiser's employment. Among other tasks, Bennett did the firm's bookkeeping work. Bennett is not a lawyer and was under Kalal's direct supervisory authority.

¶ 6. In January 1998, the firm implemented a 401(k) retirement plan, which permitted employees to designate up to 10% of their salary to be contributed to the plan from pre-tax dollars. The plan provided that the firm would match 50% of the employees' contributions of up to 6% of their earnings.

¶ 7. Employees were required to work for the firm for one year before they became eligible to participate in the 401(k) plan. Tjader and Schmeiser became eligible to participate in the retirement plan in January 1999. Both completed an enrollment form and provided it to Bennett, indicating they wished to contribute 6% of their earnings to the plan. The firm was therefore obligated to make matching contributions of 50% of each employee's personal contributions.

¶ 8. Bennett never forwarded Tjader's or Schmeiser's forms to the plan administrator, Firstar Bank. Beginning in January 1999 however, 6% of Tjader's and Schmeiser's earnings were withheld from each of their paychecks. The firm kept the withheld earnings and did not turn them over to Firstar Bank. The firm also failed to pay the employer's matching 50% contributions to the plan.

¶ 9. Despite the fact that none of Tjader's contributions had been paid into the 401(k) plan for 1999, Tjader's 1999 W-2 tax form from the firm reported that $4225 of Tjader's wages had been paid into the plan.

Similarly, although none of Schmeiser's contributions had been paid into the 401(k) plan for 1999, Schmeiser's 1999 W-2 tax form from the firm reported that $1765 had been paid into the plan.

¶ 10.  Similarly, for the year 2000, none of Tjader's or Schmeiser's withheld earnings were paid into the plan, but Tjader's 2000 W-2 tax form reflected a $4875 contribution and Schmeiser's 2000 W-2 tax form reflected a $2175 contribution.

¶ 11.  Kalal was permitted to deduct, as a business expense, salary amounts and employee expenses actually paid on his 1999 and 2000 personal income tax returns. Kalal deducted the full amount of the salaries that were reported to the IRS on Tjader's and Schmeiser's W-2 tax forms, although 6% of those salaries had not been paid. Kalal also deducted payments in purported employer contributions to pension and profit-sharing plans on his 1999 personal income tax return, although no such contributions were made in 1999.

¶ 12.  In 2000, Schmeiser worked part-time for another law firm and contributed to that firm's 401(k) plan. She contacted Bennett requesting information needed to complete a transfer form, but received no response. The transfer was never completed and Schmeiser was required to take a cash distribution on which she was taxed.

¶ 13.  After receiving that cash distribution in the summer of 2001, Schmeiser and Tjader realized that neither of them had received a report for the previous year regarding their retirement accounts. They contacted Firstar Bank and were informed that the bank had no retirement accounts for them.

¶ 14. Tjader and Schmeiser met with Kalal, who acknowledged that the firm had been unable to make employer contributions for some time due to financial concerns.

¶ 15. The referee found that Firstar Bank made numerous telephone calls to Kalal at both his office and at his home for a period of approximately two weeks in an effort to discuss the discrepancy with him. Kalal did not return these telephone calls until he was advised that the matter was being referred to Firstar Bank's legal department and to appropriate federal authorities.

¶ 16. On or about August 9, 2001, Kalal sent various required documents and funds totaling $26,448.75 to Firstar Bank.

¶ 17. During the OLR's investigation of this matter it was also determined, and the referee subsequently found, that during late 1998 and 1999, the firm failed to timely file several employment tax returns which require employers to report and pay the taxes they withhold from employees' paychecks, as well as the employer's share of social security and Medicare taxes.

¶ 18. Kalal acknowledged that these returns were not filed for the quarterly tax periods ending September 30, 1998, March 31, 1999, June 30, 1999, and September 30, 1999, although tax payments were withheld from the employees' paychecks for those periods. Kalal explained that the tax returns were not filed because funds were not available to pay the taxes due.

¶ 19. In addition, the referee determined that Kalal had continued to hold money in his client trust account for certain clients where the legal representation had concluded. Kalal acknowledged that, upon reviewing his trust account records, he had identified approximately 75 clients whose files were closed but

who still had funds on deposit in his trust account. In addition, the firm's client trust account contained some $3425.57 more than the sum of the individual client ledgers; ownership of these funds could not be immediately identified.

¶ 20. Kalal then began submitting to the OLR monthly lists of clients who had funds on deposit in his trust account, beginning in January 2001. Of the 148 clients shown on the January 2001 list, 97 were clients whose files had been closed and who were owed refunds. Of those 97 clients, 74 were clients for whom the office had active client ledgers and 23 were clients for whom the office had no ledgers. The 23 clients without ledgers had files that dated back to 1997 or earlier. The amounts owing to these individual clients ranged from less than $1 to amounts in excess of $500. The referee found that 31 clients were owed funds in excess of $100. Because the firm did not prepare a monthly schedule of subsidiary client ledgers, it was not possible to reconcile the bank statement balance with the total funds that should have been available for clients.

¶ 21. As noted, Kalal executed a stipulation and a no-contest plea in response to the OLR's charges regarding these matters. The matter was submitted to the referee, who found that the OLR had met its burden of proof to establish Kalal's violation of the supreme court rules by clear, satisfactory and convincing evidence.

¶ 22. Supreme Court Rule 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The referee concluded that:

> By failing to deposit funds that had been deducted from employees' paychecks as contributions for a

17

401(k) plan into the plan and instead putting the withheld funds to personal use, by failing to pay matching employer contributions to the 401(k) plan as required under the plan, by falsely reporting on employees' W-2 tax forms that contributions had been paid in to the 401(k) plan when they had not, and by claiming deductions on his personal income tax returns for payments that were not made, Respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, contrary to SCR 20:8.4(c).

¶ 23. Supreme Court Rule 20:5.3(b) provides that with respect to a nonlawyer employed or retained by or associated with a lawyer, "[a] lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." The referee found that by failing to implement measures designed to monitor bookkeeping and related work performed by Bennett, a nonlawyer, Kalal violated SCR 20:5.3(b).

¶ 24. The referee also concluded that by failing to file timely employer tax returns for the quarterly tax periods ending September 30, 1998, March 31, 1999, June 30, 1999, and September 30, 1999, Kalal violated a standard of conduct for attorneys as set forth in *State v. Roggensack*, 19 Wis. 2d 38, 199 N.W.2d 412 (1963), in which this court deemed professional misconduct the "intentional violation of tax laws, even though without intent to defraud the government," in violation of SCR 20:8.4(f).[2] *Id.* at 46.

---

[2] SCR 20:8.4(f) provides that it is professional misconduct to "violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

18

¶ 25. The referee found that by failing to timely pay refunds to some 97 clients who still had funds on deposit in his trust account at the conclusion of their representation, Kalal failed to deliver promptly to the client any trust account funds or other property which the client is entitled to receive, in violation of former SCR 20:1.15(b).[3]

¶ 26. In addition, by failing to maintain subsidiary ledgers for all clients for whom funds were held in his firm's client trust account, and by failing to prepare a monthly schedule of the subsidiary ledgers which could then be reconciled with the balances actually on hand in the account, Kalal failed to maintain all trust account records required under former SCR 20:1.15(e),[4]

---

[3] Former SCR 20:1.15 applies to misconduct committed prior to July 1, 2004. Former SCR 20:1.15(b) provides:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[4] Former SCR 20:1.15(e) provides:

> Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any

19

which governs operational requirements for trust funds.

¶ 27. After our review of the record in this matter, we adopt the referee's findings of fact and conclusions of law as stipulated to by the parties.[21]

■

¶ 28. Turning to the question of the appropriate discipline, the referee considered several factors in assessing the appropriate discipline for Kalal's misconduct, including the seriousness of the misconduct, the need to impress upon him the seriousness of the misconduct, the need to protect the public, the courts, and the legal system from a repetition of the misconduct, and the need to deter other attorneys from similar misconduct. *See, e.g., In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 40, 248 Wis. 2d 662, 636 N.W.2d 718. The referee specifically noted that she considered Kalal's prior discipline as an aggravating factor. She considered Kalal's commitment to making restitution to be a mitigating factor, and, indeed, the court has been advised that full restitution to both employees' 401(k) accounts has been made, and that all clients that Kalal could identify and locate have received complete refunds. Based on our own review we agree that a suspension of six months is appropriate discipline for Kalal's professional misconduct.

unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. . . . All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

¶ 29.   This brings us to a related question on which Kalal has requested the court's guidance. As noted, Kalal's trust account contains funds belonging to clients that he has been unable to identify. It is not entirely clear from the record precisely how much money remains at issue. Initially, estimates indicated an amount of approximately $3425.57.

¶ 30.   On July 15, 2005, this court issued an order to the parties regarding the appropriate resolution of these unidentified client funds. The OLR responded on July 20, 2005, as supplemented on August 5, 2005. We agree with the OLR that pursuant to SCR 22.26, Kalal has a duty to timely disburse all remaining funds from his trust account and to close the same. Based on the OLR's response, we direct Attorney Kalal to seek direction from the OLR as to the appropriate course of conduct for resolving the issue of the unidentified client funds. Attorney Kalal shall notify this court within 30 days of the date of this decision as to how the remaining unidentified funds will be managed. The OLR shall timely advise this court whether it considers the proposed resolution satisfactory under the circumstances of this matter.

¶ 31.   Finally, we turn to Kalal's request that this court postpone his suspension so that it will commence on or after November 1, 2005. As his counsel has explained in a letter to the court, filed May 3, 2005:

> Understanding that he will lose his license to practice for a period of time, Mr. Kalal has ceased taking in new clients. He does have seven criminal cases that will get resolved during the course of the Summer and into the early Fall. He believes that the last will be resolved in October of this year. Mr. Kalal has put substantial work into these matters and would like to see them through to completion, rather than

21

refer them to new counsel who will have to start from scratch. We ask that any suspension ordered by the Court not start until November 1, 2005.

The OLR does not support the request.

¶ 32. Although such requests are not generally favored, in recognition of Kalal's efforts to make restitution to the injured employees and clients in this matter, his cooperation with the OLR in this proceeding, and in reliance on the representation of his counsel, Attorney Waring Fincke, that Kalal has ceased taking new clients, we will delay Kalal's suspension until November 1, 2005, solely to permit him to complete the seven client matters he specifically identified. Representation of any other client or undertaking representation of the remaining clients on any new matter will be grounds for additional discipline and may adversely affect future reinstatement proceedings.

¶ 33. IT IS ORDERED that the license of Attorney Ralph A. Kalal to practice law in Wisconsin is suspended for a period of six months, effective November 1, 2005, on the terms set forth in this decision.

¶ 34. IT IS FURTHER ORDERED that within 30 days of the date of this order Attorney Ralph A. Kalal shall seek direction from the Office of Lawyer Regulation regarding the appropriate course of conduct for resolving the issue of unidentified client funds remaining in his custody and control, and shall submit a written statement to the court explaining how the remaining unidentified funds will be managed. Upon receipt of this statement, the OLR shall timely advise this court whether it considers the resolution satisfactory under the circumstances of this matter.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Ralph A. Kalal

shall pay to the Office of Lawyer Regulation the costs of this proceeding. If those costs are not paid within the time specified and absent a showing to this court of an inability to pay those costs within that time, the license of Attorney Ralph A. Kalal to practice law shall remain suspended until further order of the court.

¶ 36. IT IS FURTHER ORDERED that Attorney Kalal comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.